SOVEREIGN CAMP WOODMEN OF THE WORLD vs BRIDGES.

Opinion rendered Sept. 26, 1907.

(104 S. W. Rep. 672).

1. *Rulings of Appellate Court—Harmless Error.*
   A cause will not be reversed by the Appellate Court because leading questions were asked, unless it plainly appears that the party making the complaint was prejudiced thereby

2. *Same—Verdict.*
   In a cause where appellant did not introduce any evidence, verdict will not be disturbed on appeal if supported by any evidence.

3. *Release Fraud.*

> A verdict that a release of $2,000 to a beneficiary in a mutual benefit association was procured by fraud on the part of insurer was held authorized by the evidence.

Appeal from the United States Court for the Southern District of the Indian Territory; before Justice Hosea Townsend, October 31, 1905.

Action by Nettie Burris Bridges against the Sovereign Camp Woodmen of the World. From a judgment for plaintiff, defendant appeals. Affirmed.

*N. B. Maxey*, for appellant.

*Nicholas Wolf* and *W. A. Ledbetter*, for appellee.

GILL, C. J. In this case the appellee in this court filed her complaint in the United States Court for the southern district, Indian Territory, at Tishomingo, against the appellant, seeking to recover on a certificate of insurance which she alleges that she surrendered on a compromise which she claims was obtained from her through the fraudulent representations of the appellant's agent as to the liability of the appellant under said certificate of insurance. The appellant claims that the compromise was made in good faith and should stand.

It appears from the pleadings and evidence that the husband of the appellee was a member in good standing of the appellant lodge at the time of his death, that he possessed a certificate of insurance for $2,000 in the appellant lodge and that his wife, the appellee, was the beneficiary. One of the conditions of the certificate of insurance was that it was to become void in case the insured came to his death by means of suicide. The husband of the appellee died from the effects of a dose of carbolic acid, taken voluntarily by himself. The appellee recovered below on the theory that the agent of the appellant had fraudulently represented that it was not liable, thereby inducing her to believe that she could not recover and to make a compromise for $206. At the time this compromise

was made the appellee came to her brother's office and there met the agent of the appellant. She claims that the impression she got from the conversation had with the agent was that whether the death was accidental or not she could not recover, and that she thought it was better to get back the amount her husband had paid as assessments, $106, plus $100, which the agent told her the appellant would have to pay as attorney's fees in case of suit, and which it would give her in case of compromise, than to get nothing, and so she signed the release. Her brother says that he was of the opinion that it was a case of suicide and therefore a good settlement.

The only evidence on the question of whether or not the deceased committed suicide was this opinion of the appellee's brother, unsupported by evidence of better knowledge, and the direct testimony of the wife. She says that on the day her husband died he had been feeling unwell and had been unwell for some time; that there were several bottles on the mantel; and that in one of these bottles was some carbolic acid which she had gotten on prescription of a physician and kept in that place, and that in a bottle of the same kind and about the same size was some gargle which her husband used for a sore throat, and that in her opinion he took the carbolic acid by mistake, thinking that it was his gargle. In its assignment of error the appellant seeks to reverse this cause, because the court admitted improper evidence, because the court permitted the plaintiff to ask leading questions, and overruled its motion to take the case from the jury, and overruled its motion for a new trial. After a careful perusal of the record we fail to see where the court admitted improper evidence to the prejudice of the appellant. The questions, at times, were somewhat leading under the rules of evidence prohibiting a party from leading his own witness; but before an Appellate Court should reverse a case on the ground that leading questions have been asked, it should appear clearly that such questions

prejudiced the rights of the complaining party in the premises, and such showing has not been made in this case, but, to the contrary, the record discloses that the trial court required counsel to ask their questions in proper form.

There is only one question in this case, and that is whether or not there is evidence to support the allegations of the complaint that the surrender of the certificate of insurance and the giving of a release to the appellant by appellee was obtained through the fraudulent misrepresentations of the agent of the appellant, and the discussion of this question determines whether or not the trial court erred in refusing to take the case from the jury or grant a new trial. If there is any evidence which supports these allegations, in view of the fact that the appellant introduced no testimony whatever, but rested its case upon the evidence of the plaintiff below, this court is not justified in disturbing the verdict; for an Appellate Court is loath to disturb the findings of fact by a jury, unless it is manifest that their verdict is contrary to the evidence or to the law. There are so many incidents which transpire in the course of a trial, the manner, bearing, and gesticulation of the parties, their apparent candor or untruthfulness, and their appearance and behavior, etc., which cannot possibly be incorporated in a record, that an Appellate Court is inclined to support a verdict if it is at all reasonable, under the evidence.

Here is a case in which the deceased died from an overdose of carbolic acid. There were two bottles of like appearance upon the mantel—in one was carbolic acid, and in the other some gargle which he was taking. He got hold of the wrong bottle and died as a result. The law would not presume from this state of facts that he deliberately intended to end his own life, without evidence to support that theory. On the other hand, the presumption is that a man will preserve this life to the last of his endurance. And now, a compromise is effected by the appellant on the theory that the beneficiary could not

recover because the insured came to his death by his own hand, whether accidentally or by suicide. The appellant claims it was a fair compromise of a disputed liability. The appellee testifies that she signed the compromise because she was led to believe that she could not recover in any event. What caused her to compromise? The evidence surely does not support the idea that she thought it was a case of suicide in spite of appellant's assertion to the contrary. The fact is that she testified that in her opinion her husband took the poison by mistake and accident.

We think that the evidence in this case was sufficient to convince a jury that the compromise of a $2,000 claim for $206 was effected by a misrepresentation as to the liability of the appellant; and, the jury having settled this question of fact, their verdict will not be disturbed.

The judgment of the District Court is affirmed.

CLAYTON and LAWRENCE, JJ., concur.